**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   GLENBROOK CAPITAL LIMITED                    No. C07-02377 MJJ

12   PARTNERSHIP,                                 **ORDER GRANTING IN PART AND
                                                  DENYING IN PART DEFENDANTS'**
13                    Plaintiff,                  **MOTION TO DISMISS**

14      v.

15   MALI KUO, ET AL,

16                    Defendants.
     _____/
17

18                           **INTRODUCTION**

19          Before the Court is Defendants Mali Kuo ("Kuo"), Douglas Watson ("Watson"), and Digital

20   Video Systems, Inc.'s ("DVS") (collectively, "Defendants") Motion to Dismiss.  (Docket No. 41.)

21   Plaintiff Glenbrook Capital Limited Partnership ("Plaintiff" or "Glenbrook") opposes the motion.

22   For the following reasons, the Court **GRANTS** in part and **DENIES** in part Defendants' Motion to

23   Dismiss.

24                        **FACTUAL BACKGROUND**

25          The current shareholder action arises from Defendants' alleged act of selling substantially all

26   of DVS's assets – consisting of DVS's entire stake in another company – without holding the

27   necessary shareholder vote, and without sufficiently disclosing their intent to use the sale proceeds

28   to satisfy the Chief Executive Officer's personal debts.  The material allegations of the First

     Amended Complaint ("FAC"), which are taken as true for purposes of the current motion, are as

follows.

**A.      The Parties**

Plaintiff Glenbrook is a Nevada limited partnership.  (FAC ¶ 2.)  It holds a minority interest in Defendant DVS.  (*Id.*)

DVS is a Delaware corporation with its principal place of business in Mountain View, California.  (*Id.* ¶ 3.)  DVS became a public company on May 14, 1996, in an initial public offering registered with the SEC.  (FAC ¶ 9.)  DVS's shares were originally listed on the NASDAQ, but its shares now trade over-the-counter.  (*Id.*)  At the time this Motion was filed, DVS's shares traded at $0.10 per share.  (*Id.* ¶ 43.)[1]

Defendant Kuo is the current Chairman and Chief Executive Officer ("CEO") of DVS.  (*Id.* ¶ 4.)  She has signed several of DVS's SEC filings, including the November 21, 2005 Form 10-Q, the December 12, 2005 Form 8-K, the December 30, 2005 Form 8-K, the March 24, 2006 Form 8-K, and the April 18, 2006 Form 8-K.  (*Id.*)  Kuo lives in Santa Clara County.  (*Id.*)

Defendant Watson is the Chief Operating Officer of DVS and a director.  (*Id.* ¶ 5.)  Watson had previously served as DVS's Chief Financial Officer, before resigning on March 19, 2006.  (*Id.* ¶ 42, 45.)  He maintains control over DVS's bank accounts.  (*Id* ¶ 5.)  Watson also lives in Santa Clara County.  (*Id.*)

**B.      Kuo's Litigation Against DVS and Control of the Board**

In June, 2002, DVS sued Kuo and other former officers and directors in Santa Clara County Superior Court for breach of fiduciary duty.[2]  (FAC ¶ 13.)  Kuo filed a cross-claim for unpaid compensation and for securities fraud.  (*Id.*)  On February 1, 2005, a jury found for Kuo, and on April 8, 2005, the court entered judgment against DVS for $3.42 million.  (*Id.*)

On April 29, 2005, following the entry of judgment, DVS and Kuo settled.  (*Id.* ¶ 14.)  Plaintiff alleges that DVS consented to the settlement under duress, when Kuo accompanied her

---

[1]After 2002, DVS's only significant activity was to act as a holding company for a majority ownership position in DVS Korea, Ltd. ("DVSK").  (*Id.* ¶ 10.)  That interest was sold on December 29, 2005, in the transaction that is at the heart of this litigation.  (*Id.* ¶ 33.)  DVS has not filed a financial report with the SEC since November 21, 2005, but every indication is that DVS is currently a mere "shell corporation" with no or negligible continuing operations.  (*Id.* ¶¶ 11-12.)

[2]Although Kuo is currently the CEO and Chairman, she was a former employee at the time of the lawsuit. (FAC ¶ 14.)

*United States District Court*
For the Northern District of California

United States District Court
For the Northern District of California

1   demands with threats to immediately levy upon her judgment and destroy DVS's business.  (*Id*. ¶

2   14.)  DVS and Kuo memorialized their settlement in a written agreement entitled "3.42 Million

3   Judgment Equity Conversion Agreement" ("Settlement Agreement.") (*Id*. ¶ 15.)  The Settlement

4   Agreement required DVS to grant 1,001,740 shares of its non-restricted common stock and a

5   warrant to acquire 100,147 shares of its non-restricted common stock to Kuo and her designees.  (*Id*.

6   ¶ 15.)  The Settlement Agreement further provided that DVS was to take steps to register those

7   shares of common stock and that in the meantime it was to issue preferred stock (the "Series D") to

8   Kuo and her designees.  (*Id*. ¶ 15.)  The Series D bore an 8% dividend, and each share of Series D

9   was convertible into ten shares of DVS common stock.  (*Id*.)  All of the purported recipients of the

10  shares of Series D were Kuo's personal creditors, business partners, relatives or nominees.  (*Id*. ¶¶

11  16-18.)  In all, some 18 of Kuo's creditor-designees received the 100,147 shares of Series D.  (*Id*.)

12          In addition to the Series D issuance, the April 29, 2005 settlement also obligated DVS's

13  directors to elect a slate of Kuo's nominees to the DVS board.  (*Id*. ¶ 22.)  On May 24, 2005, the

14  DVS Board elected Kuo and two of her nominees to the Board.  (*Id* ¶ 24.)  Kuo thereby gained

15  effective control of DVS, and was appointed CEO and Chair.  (*Id*.)  Since that election, all directors

16  other than Kuo and Watson have resigned.  (*Id*.)

17          Following the settlement, on May 18, 2005, DVS, Watson, and Kuo entered into a pledge

18  agreement (the "Pledge Agreement"), which was required by the Settlement Agreement.  (*Id*. ¶ 19.)

19  The Pledge Agreement provided in part that all shares of DVSK would be pledged to Kuo upon

20  signing of the Settlement Agreement as collateral for the registration of the common stock provided

21  for in the Settlement Agreement.  (*Id*.)  Under the terms of the Pledge Agreement, Kuo and her

22  purported creditors were to receive DVS shares, to be registered almost immediately.  (*Id*.)  If they

23  did not receive the shares, Kuo and the creditors would have the right to foreclose on DVS's shares

24  in DVSK.  (*Id*.)  The Pledge Agreement was concealed by Defendants until March 2007, when it

25  was produced by Kuo in litigation between Kuo and a third party.  (*Id*. ¶ 21.)

26  **C.      Kuo Engineers the Sale of DVS's Shares in DVSK**

27          Defendants intended to satisfy the terms of the Settlement Agreement, and thus Kuo's

28  creditors, by registering the Series D shares, or the common stock into which it was convertible, so

3

1   that Kuo's creditors could sell their shares on the public markets.  (*Id.* ¶ 26.)  DVS, however, was

2   not able to register the stock because they did not timely file the required financial information with

3   the SEC.  (*Id.* ¶¶ 27-28.)  DVS was due to file its Form 10-Q for the first quarter of 2005 on May 17,

4   2005.  (*Id.* ¶ 27.)  Instead, however, DVS filed a "Notification of Late Filing," which bought it an

5   additional six days.  (*Id.*)  At or about this time, DVS's outside auditors resigned.  (*Id.*)  On May 22,

6   2005, DVS filed its Form 10-Q without the auditors' consent.  (*Id.*)  Absent current financial

7   information, DVS could not register any new shares, either the Series D or new common shares.  (*Id.*

8   ¶ 28.)

9          Accordingly, Defendants had to find another way to satisfy Kuo's creditors, as required

10   under the Settlement Agreement.  (*Id.* ¶¶ 22, 28.)  On or about December 10, 2005, DVS entered

11   into a two-page stock purchase agreement (the "SPA") with Korea Technology Investment Corp.

12   ("KTIC") under which DVS would sell its entire stake in DVSK—substantially all of its assets—for

13   $12 million.  (*Id.* ¶¶ 1, 30, 31.)  DVS did not retain an investment banker in connection with the sale,

14   or make any public announcements of it prior to signing the SPA.  (*Id.* ¶ 30.)  On December 29,

15   2005, the sale of the DVSK stock to KTIC closed.  (*Id.* ¶ 33.)  The transaction moved so quickly that

16   Kuo's personal attorney has called it a "fire sale."  (*Id.* ¶ 35.)

17          Defendants did not disclose the planned sale of DVSK stock in any public filing prior to the

18   date the SPA was signed.  (*Id.* ¶ 30.)  Even though it was a sale of substantially all of DVS's assets,

19   no shareholder vote was held.  (*Id.* ¶ 39.)

20          The SPA was first disclosed in a December 12, 2005 Form 8-K, two days after the SPA was

21   signed.  (*Id.* ¶¶ 30, 32.)  On December 30, 2005, DVS filed another Form 8-K, which stated that the

22   sale closed on December 29, 2005.  (*Id.* ¶ 34.)  Neither of the Forms 8-K disclosed, however, that

23   $1.5 million of the proceeds of the sale would be used to pay Kuo's personal creditors.  (*Id.* ¶¶ 32,

24   34, 52-55)  The December 12 Form 8-K claims that DVS obtained written consent for the

25   transaction from the holders of a majority of its shares, but does not identify those holders or

26   describe their interests in the sale.  (*Id.* ¶ 39.)  It also promised that DVS would seek shareholder

27   ratification of the sale and the transaction would enable DVS to pursue other strategic interests.  (*Id.*)

28          The sale generated $12 million in proceeds for DVS.  (*Id.* ¶ 31.)  On December 30, 2005,

United States District Court
For the Northern District of California

1    DVS issued checks totaling $150,000 to Kuo's personal creditors. (*Id.* ¶ 36.) On January 2, 2006,

2    DVS issued another round of checks, totaling $788,000. (*Id.*) In the end, some $1.5 million was

3    paid to Kuo's creditors by DVS. (*Id.*) The remaining proceeds are no longer with DVS. (*Id.* ¶ 38.)

4    **D.    DVS Fails to File Required Reports with the SEC**

5           As a publicly-traded company, DVS is required to file annual and quarterly reports with

6    the SEC on Forms 10-K and 10-Q. *See generally* 15 U.S.C. § 78m. DVS's last such filing was its

7    Form 10-Q filed for the third quarter of 2005. (FAC ¶ 46.) Since that date, DVS has not filed either

8    a Form 10-K or a Form 10-Q. (*Id.*) On April 17, 2006, DVS filed a Form 8-K with the SEC stating

9    that it would be unable to file its annual report for the year 2005, claiming an inability to obtain all

10   necessary financial data from DVSK. (*Id.* ¶ 43.)

11          DVS has also failed to file any proxy materials, and has not held an annual meeting of

12   stockholders since November 18, 2004. (*Id.* ¶ 46.) On August 8, 2007, DVS filed a Form 8-K with

13   the SEC stating that DVS's Board had approved the calling of an annual meeting of stockholders to

14   be held on October 15, 2007. (*Id.* ¶ 47.) As of the filing of the FAC, DVS had not filed an

15   Information Statement describing the actions to be taken at the meeting and had said nothing more to

16   its stockholders regarding the meeting. (*Id.* ¶¶ 47, 49.) As a result of these failures to file, DVS's

17   shareholders have no idea what happened to the remainder of the $12 million.

18   **E.    DVS Stock Price Decline**

19          Plaintiff alleges that DVS's common stock has declined steeply since December 29, 2005,

20   when the DVSK sale closed. (FAC ¶ 43.) DVS's common stock closed at $1.60 per share on

21   December 29, 2005. (*Id.*) DVS's shares have not traded above $1.00 since April 27, 2006, ten days

22   after DVS announced it would not be able to file its Form 10-K. (*Id.*) On April 28, DVS stock

23   declined 14 cents in a day, a fall of over 10%. (*Id.*) DVS stock continued to decline steadily, and by

24   June 15, 2006, it was trading at 55 cents per share. (*Id.*) On May 2, 2007, the day Plaintiff filed this

25   lawsuit, DVS stock closed at $0.19. (*Id.* ¶ 45.) Two days later, on May 4, 2007, DVS stock closed

26   at 14 cents per share. It currently trades at around 10 cents per share. (*Id.*)

27   **F.    Procedural History**

28          Plaintiff filed this action on May 2, 2007 asserting claims for: (1) Securities Fraud in

*left margin:* **United States District Court**  For the Northern District of California

5

violation of Section 10(b) and Rule 10b-5 against all Defendants; (2) failure to follow Proxy

Disclosure Rules in violation of Section 14(c) of the 1934 Act and SEC Rule 14c-2 against all

Defendants; (3) Breach of Fiduciary Duties in violation of the duty of loyalty against all Defendants;

(4) Appointment of a Receiver pursuant to 8 Delaware Code § 226(a)(3) against DVS; (5)

Appointment of a Receiver pursuant to 8 Delaware Code § 291 against DVS; (6) Appointment of a

Receiver or Custodian pursuant to Delaware common law against DVS; and (7) Compelling Annual

Shareholder Meeting against DVS.  (*See* Plf.'s Compl., Docket No. 1.)  Defendants previously

brought a Motion to Dismiss, seeking an order dismissing each of Plaintiff's claims.  The Court

granted Defendants' Motion in part, and dismissed Plaintiff's first, second and third claims without

prejudice.  Plaintiff filed the FAC on October 9, 2007, asserting all of the same claims, save for the

third claim.  Instead of claiming a breach of fiduciary duties, Plaintiff now claims a violation of

Section 20(a) of the 1934 Act (control person liability).

     Defendants again seek an order dismissing each of Plaintiff's claims.

## LEGAL STANDARD

**A.**    **Motion to Dismiss**

     A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal

sufficiency of a claim.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Because the focus of a

Rule 12(b)(6) motion is on the legal sufficiency, rather than the substantive merits of a claim, the

Court ordinarily limits its review to the face of the complaint.  *See Van Buskirk v. Cable News

Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002).  In considering a Rule 12(b)(6) motion, the Court

accepts the plaintiff's material allegations in the complaint as true and construes them in the light

most favorable to the plaintiff.  *See Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000).

Generally, dismissal is proper only when the plaintiff has failed to assert a cognizable legal theory or

failed to allege sufficient facts under a cognizable legal theory.  *See SmileCare Dental Group v.

Delta Dental Plan of Cal., Inc.*, 88 F.3d 780, 782 (9th Cir. 1996); *Balisteri v. Pacifica Police Dep't*,

901 F.2d 696, 699 (9th Cir. 1988); *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th

Cir. 1984).  In pleading sufficient facts, however, a plaintiff must suggest his or her right to relief is

more than merely conceivable, but plausible on its face.  *See Bell Atlantic Corp. v. Twombly*, 127 S.

*United States District Court*
For the Northern District of California

1  Ct. 1955, 1974 (2007).

2          Rule 8(a) of the Federal Rules of Civil Procedure requires only "a short and plain statement

3  of the claim showing that the pleader is entitled to relief."  Accordingly, motions to dismiss for

4  failure to state a claim pursuant to Rule 12(b)(6) are typically disfavored; complaints are construed

5  liberally to set forth some basis for relief, as long as they provide basic notice to the defendants of

6  the charges against them.  *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 1248, 1257 (N.D.

7  Cal. 2000).  Where a plaintiff alleges fraud, however, Rule 9(b) requires the plaintiff to state with

8  particularity the circumstances constituting fraud.  To meet the heightened pleading requirements of

9  Rule 9(b), the Ninth Circuit has held that a fraud claim must contain three elements:  (1) the time,

10  place, and content of the alleged misrepresentations; and (2) an explanation as to why the statement

11  or omission complained of was false or misleading.  *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541,

12  1547–49 (9th Cir. 1994).

13          In the securities context, the pleading requirements are even more stringent.

14  **B.      Private Securities Litigation Reform Act**

15          In 1995, Congress enacted the PSLRA to provide "protections to discourage frivolous

16  [securities] litigation."  H.R. Conf. Rep. No. 104-369, 104th Cong., 1st Sess. at 32 (Nov. 28, 1995).

17  The PSLRA strengthened the already-heightened pleading requirements of Rule 9(b).  Under the

18  PSLRA, actions based on allegations of material misstatements or omissions must "specify each

19  statement alleged to have been misleading, the reason or reasons why the statement is misleading,

20  and, if an allegation regarding the statement or omission is made on information and belief, the

21  complaint shall state with particularity all facts on which that belief is formed."  15 U.S.C. §78u-

22  4(b)(1).

23          The PSLRA also heightened the pleading threshold for causes of action brought under

24  Section 10(b) and Rule 10b-5.  Specifically, the PSLRA imposed strict requirements for pleading

25  scienter.  Under the PSLRA, a complaint must "state with particularity facts giving rise to a strong

26  inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2).  To

27  qualify as "strong," an inference of scienter must be more than merely plausible or reasonable – it

28  must be cogent and at least as compelling as any opposing inference of nonfraudulent intent.

**United States District Court**
For the Northern District of California

7

1    *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S.Ct. 2499, 2509-10 (2007).  The Ninth Circuit, in

2    interpreting the PSLRA, has held that "a private securities plaintiff proceeding under the [PSLRA]

3    must plead, in great detail, facts that constitute strong circumstantial evidence of deliberately

4    reckless or conscious misconduct."  *In re Silicon Graphics Inc.*, 183 F.3d 970, 974 (9th Cir. 1999).

5    If the complaint does not satisfy the pleading requirements of the PSLRA, upon motion by the

6    defendant, the court must dismiss the complaint.  *See* 15 U.S.C. §78u-4(b)(1).

7          The PSLRA's Safe Harbor provision provides that a securities fraud claim may not lie with

8    respect to a statement that is "identified as a forward-looking statement, and is accompanied by

9    meaningful cautionary statements identifying important factors that could cause actual results to

10   differ materially from those in the forward-looking statement."  15 U.S.C. § 78u-5(c)(1)(A)(I).

11   However, a person may be held liable if the forward-looking statement is made with "actual

12   knowledge . . . that the statement was false or misleading."  15 U.S.C. §  78u-5(c)(1)(B); *No. 84*

13   *Employer-Teamster Joint Council Pension Trust Fund v. America West Holding Corp.*, 320 F.3d

14   920, 936 (9th Cir. 2003); *but see In re Seebeyond Technologies Corp. Sec. Litig.*, 266 F. Supp. 2d

15   1150, 1164-65 (C.D. Cal. 2003) (disagreeing with the analysis in *America West* and finding that a

16   defendant is immune from liability if it satisfies either 15 U.S.C. § 78u- 5(c)(1)(A) or (B)).

**ANALYSIS**

18   **A.      Request for Judicial Notice**

19         As a threshold matter, the Court addresses Defendants' requests that the Court take judicial

20   notice of five documents, each of which are expressly referenced in Plaintiff's Complaint.[3]  Plaintiff

21   does not object to Defendants' requests.

22         Defendants ask the Court to judicially notice the following documents incorporated by

23   reference in Plaintiff's Complaint: (1) Transcript of Deposition of Mali Kuo taken in another case on

24   June 27, 2007; (2) DVS's Form 8-K filed with the SEC on December 30, 2005; (3) DVS's Form 8-K

25   filed with the SEC on April 18, 2006; (4) DVS's Form 8-K filed with the SEC on March 18, 2006;

26   and (5) Transcript of Deposition of Mali Kuo taken in another case on February 1, 2007.  (*See* Defs.'

27

28         [3] Defendants also ask the Court to take judicial notice of a sixth document, the historical stock prices for DVS. (*See* Defs.' Third Request for Judicial Notice at 3.)  However, because the Court does not rely on this document in this Motion, the request is denied.

United States District Court

For the Northern District of California

1    Third and Fourth Requests for Judicial Notice.)

2         Federal Rule of Evidence 201 allows a court to take judicial notice of a fact "not subject to

3    reasonable dispute in that it is . . . capable of accurate and ready determination by resort to sources

4    whose accuracy cannot reasonably be questioned."  Even where judicial notice is not appropriate,

5    courts may also properly consider documents "whose contents are alleged in a complaint and whose

6    authenticity no party questions, but which are not physically attached to the [plaintiff's] pleadings."

7    *Branch v. Tunnel*, 14 F.3d 449, 454 (9th Cir. 1994).

8         Here, each of the documents described above is explicitly incorporated by reference in

9    Plaintiff's Complaint.  Moreover, three of the documents are SEC filings, which are judicially

10   noticeable in this context.  *See In re Calpine Corp. Sec. Litig*., 288 F. Supp. 2d 1054, 1076 (N.D.

11   Cal. 2003) (the court may take judicial notice of public filings).  Accordingly, the Court takes

12   judicial notice of these documents.

13   **B.    Section 10(b) of the Securities and Exchange Act and Rule 10b-5**

14        Plaintiff's first claim is for securities fraud in violation of Section 10(b) and Rule 10b-5.

15   Plaintiff alleges that Defendants sold substantially all of the assets of DVS through the sale of

16   DVSK, without disclosing their intent to use the proceeds to pay off Kuo's personal creditors.  (FAC

17   ¶¶ 52-56.)  Specifically, Plaintiff alleges that two of DVS's Forms 8-K, filed on December 12 and

18   December 30, 2005, failed to disclose that the proceeds of the sale would be used to pay Kuo's

19   personal creditors, with the remainder to be used for Kuo and Watson's own purposes.  (FAC ¶¶ 54-

20   56.)

21        Section 10(b) of the Exchange Act  provides, in part, that it is unlawful "to use or employ in

22   connection with the purchase or sale of any security registered on a national securities exchange or

23   any security not so registered, any manipulative or deceptive device or contrivance in contravention

24   of such rules and regulations as the [SEC] may prescribe."  15 U.S.C. § 78j(b).  Rule 10b-5,

25   promulgated under Section 10(b), makes it unlawful for any person to use interstate commerce:  (a)

26   to employ any device, scheme, or artifice to defraud; (b) to make any untrue statement of material

27   fact or to omit to state a material fact necessary in order to make the statements made, in light of the

28   circumstances under which they were made, not misleading; or (c) to engage in any act, practice, or

United States District Court

For the Northern District of California

course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.  17 C.F.R. § 240.10b-5.

For a claim under Section 10(b) and Rule 10b-5 to be actionable, a plaintiff must allege:  (1) a misrepresentation or omission; (2) of material fact; (3) made with scienter; (4) on which the plaintiff justifiably relied; (5) that proximately caused the alleged loss.  *See Binder v. Gillespie*, 184 F.3d 1059, 1063 (9th Cir. 1999).  A complaint must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed."  15 U.S.C. § 78u-4(b)(2).  As discussed above, in order to avoid having the action dismissed, a plaintiff must "plead with particularity both falsity and scienter."  *Ronconi v. Larkin*, 253 F.3d 423, 429 (9th Cir. 2001).  The Ninth Circuit, in *Ronconi*, articulated the rule as follows:

> Because falsity and scienter in private securities fraud cases are generally strongly inferred from the same set of facts, we have incorporated the dual pleading requirements of 15 U.S.C. §§ 78u-4(b)(1) and (b)(2) into a single inquiry.  In considering whether a private securities fraud complaint can survive dismissal under Rule 12(b)(6), we must determine whether 'particular facts in the complaint, taken as a whole, raise a strong inference that defendants intentionally or [with] 'deliberate recklessness' made false or misleading statements to investors.'  Where pleadings are not sufficiently particularized or where, taken as a whole, they do not raise a 'strong inference' that misleading statements were knowingly or [with] deliberate recklessness made to investors, a private securities fraud complaint is properly dismissed under Rule 12(b)(6).

*Id.* (citations and internal quotation marks omitted).

In this Motion, Defendants contend that Plaintiff fails to satisfy the heightened pleading requirements under the PSLRA.  In particular, Defendants argue that: (1) Plaintiff has failed to adequately plead fraud with particularity; (2) Plaintiff has failed to plead with particularity facts demonstrating a strong inference of scienter; (3) Plaintiff's allegations against Defendant Watson are inadequate; (4) Plaintiff fails to adequately plead loss causation; (5) Plaintiff fails to adequately plead justifiable reliance; and (6) Plaintiff fails to adequately plead that the omissions were material.

Plaintiff, in its Opposition, asserts that liability under Rule 10b-5 stems not just from these omissions but also from two misrepresentations contained in the Forms 8-K: (1) that the December 12, 2005 Form 8-K included the misleading statement that the transaction would benefit DVS

United States District Court

For the Northern District of California

10

because it would allow it to pursue other strategic alliances, and (2) that the December 12, 2005 Form 8-K misrepresented that DVS would seek shareholder ratification of the transaction. (Plf.'s Opp. at 9-10.) Defendants object to these new claims, arguing that the FAC does not state any claims of misrepresentation under Rule 10b-5, only claims of omission. (Defs.' Reply at 3.) Defendants are correct that Plaintiff's First Claim For Relief, pursuant to Section 10(b) and Rule 10(b)(5), alleges that Defendants made omissions, not material misrepresentations, in their Forms 8-K. The Court's focus is therefore on Plaintiff's claim of material omissions, although the alleged misrepresentations are considered insofar as they are relevant to Plaintiff's claims.

**1.    Corroboration Based on Discovery in Other Litigation.**

As a preliminary matter, Defendants contend that the Court should not consider the new information Plaintiff provides in the FAC because Plaintiff obtained the documents he relies upon through discovery in other litigation. (Defs.' Mem. of P. & A. at 11.) Defendants note that the PSLRA was passed so that plaintiffs cannot file an unparticularized complaint, then conduct discovery and amend the complaint depending on what was discovered. (*Id.*) Thus, Defendants contend, it would be anomalous if Plaintiff could conduct contemporaneous discovery relevant to this case in other proceedings while this action was pending and then be allowed to present it here in its FAC. (*Id.*) The Court finds this argument unavailing.

The PSLRA provides for an automatic stay of discovery in federal securities actions, or in a private action in state court, when a defendant files a motion to dismiss a complaint. *See* 15 U.S.C. § 78u-4(b)(3)(B), (D). Here, Plaintiff adds corroboration for its allegations by way of quoting and submitting materials obtained in discovery from other litigation Plaintiff's counsel is conducting against DVS. (*See* FAC ¶¶ 15-18, 22, 23, 26, 36-38; Defs.' Mem. of P. & A. at 11.) The automatic stay provision does not bar a Plaintiff from supporting its contentions in an amended complaint with discovery gained through prior litigation. In addition, Defendants do not contend that Plaintiff obtained the discovery in a manner inconsistent with the rationale underlying the automatic stay provision. Therefore, on this record, the Court finds that the materials that Plaintiff gained through discovery in separate litigation, and included in the FAC, are properly before the Court.

**2.    Alleged Omissions from the Forms 8-K.**

United States District Court

For the Northern District of California

1    Defendants contend that Plaintiff has failed to plead the required particularized facts to

2 support the allegations that are based on "information and belief" and that certain allegations are

3 wholly without particularized support.  (Defs.' Mem. of P. & A. at 11-12.)  These allegations

4 include: (1) that DVS consented to settlement of Kuo's claims under duress; (2) that DVS should

5 have pursued the development of DVSK's business instead of satisfying Kuo's creditors by selling

6 DVSK shares; (3) that the allegations against Defendant Watson are conclusory, speculative

7 assertions; and (4) that there is no allegation of what misleading impression was created by the

8 alleged omission of Kuo's alleged intent to use part of the proceeds to satisfy her creditor-designees'

9 claim.  (Defs.' Mem. of P. & A. at 11-13.)

10    Defendants, quoting *Tellabs*, 127 S.Ct. at 2510, further contend that Plaintiff inadequately

11 pleads scienter because the pleaded facts must give rise to a "cogent and compelling" inference of

12 scienter, "in light of other explanations."   (Defs.' Mem. of P. & A. at 5.)  Defendants proffer five

13 facts that they allege undermine the requisite scienter: (1) Kuo had a legal right to execute on the

14 company's assets under Delaware law, including the DVSK shares; (2) Defendants had to sell the

15 DVSK shares because other creditors-designees insisted; (3) the DVSK transaction was fully

16 disclosed and there is no duty to disclose to shareholders the purpose of the transaction when the

17 purpose is a corporation paying its creditors; (4) the transaction was already approved by an

18 outstanding majority of shares thus there was no conceivable motive to conceal it; and (5)

19 Defendants maximized the shareholder value in the shares by waiting until December to go through

20 with the sale.  (Defs.' Mem. of P. & A. at 5-9.)

21    Plaintiff, in response, argues that each of the challenged allegations are sufficiently pleaded.

22 Plaintiff also responds briefly to each of Defendants' arguments regarding scienter, but relies

23 primarily on its contentions that (1) once Defendants chose to make a material public statement in

24 the December 12 and 30, 2005 Forms 8-K, they had a duty to disclose the material facts concerning

25 the statement and not misrepresent the facts; and (2) both the timeline of the events and the content

26 of the two Forms 8-K are sufficient to create a strong inference of scienter, or at east as plausible as

27 any competing inference.  (Plf.'s Opp. at 11-12.)

28    The Court reviews the law in this area then turns to the facts of this case.

Where allegations regarding a statement or omission are made on information and belief, the complaint must state with particularity all facts on which that belief is formed. 15 U.S.C. § 78u-4(b)(1). The Reform Act's information and belief pleading standard focuses on whether there are "adequate corroborating details" in the complaint. *See In re Silicon Graphics Securities Litigation*, 183 F.3d 970, 985 (9th Cir. 1999). The purpose of this requirement is to prevent a plaintiff from citing vague reports and unspecified sources in the hopes that discovery will turn up something actionable. *Id.*; *see also In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1271 (N.D. Cal. 2000) (citing *Silicon Graphics*, 183 F.3d at 985). This means that a plaintiff must provide, in great detail, all the relevant facts forming the basis of his belief. *Id.*

In discussing the requisite scienter under the PSLRA, the Ninth Circuit has explained:

> [A] private securities plaintiff proceeding under the PSLRA must plead, in great detail, facts that constitute strong circumstantial evidence of deliberately reckless[4] or conscious misconduct. . . . [A]lthough facts showing mere recklessness or a motive to commit fraud and opportunity to do so may provide some reasonable inference of intent, they are not sufficient to establish a strong inference of deliberate recklessness. In order to show a strong inference of deliberate recklessness, plaintiffs must state facts that come closer to demonstrating intent, as opposed to mere motive and opportunity. Accordingly, . . . particular facts giving rise to a strong inference of deliberate recklessness, at a minimum, is required to satisfy the heightened pleading standard under the PSLRA.

*In re Silicon Graphics*, 183 F.3d at 974 (emphasis added). When considering whether a plaintiff has shown a strong inference of scienter, "the court must consider all reasonable inferences to be drawn from the allegations, including inferences unfavorable to the plaintiffs," *Gompper v. VISX, Inc.*, 298 F.3d 893, 897 (9th Cir. 2002), and "answer the larger question of whether [plaintiffs'] complaint, considered in its entirety, states facts which give rise to a strong inference [of scienter]." *Silicon Graphics*, 183 F.3d at 985. To qualify as "strong," an inference of scienter must be more than merely plausible or reasonable – it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent. *Tellabs, Inc.*, 127 S.Ct. at 2509-10.

---

[4]The Ninth Circuit has defined recklessness in this context as: "[A] highly unreasonable omission, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *S.E.C. v. Rubera*, 350 F.3d 1084, 1094 (9th Cir. 2003) (citing *Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1569 (9th Cir. 1990) (en banc)).

13

United States District Court

For the Northern District of California

1   In the instant case, Plaintiff alleges that Defendants' omissions misled the shareholders as to

2   the purpose of the sale, eventually resulting in harm to their investments.  Whether the FAC

3   sufficiently alleges that these omissions were misleading, and whether Defendants had the requisite

4   scienter to so mislead, are thus the critical questions before the Court.

5           **a.      The Omissions Are Alleged with Sufficient Particularity But Are Not**

6                   **Sufficiently Misleading.**

7           The Court takes each of the alleged omissions in turn to determine if the FAC sufficiently

8   alleges that each omission "affirmatively create[d] an impression of a state of affairs that differe[d]

9   in a material way from the one that actually existe[d,]" and, if based on information and belief, states

10  with particularity all facts on which the belief is formed.[5]  *Brody*, 280 F.3d at 1006; *Silicon*

11  *Graphics*, 183 F.3d at 985.

12          Plaintiff alleges two omissions.  First, Plaintiff alleges that Defendants omitted, from the

13  December 12, 2005 Form 8-K, their intent to use the proceeds from the sale of substantially all of

14  the assets of DVS to pay off Kuo's personal creditors, even though they disclosed the SPA itself.

15  (*See* FAC ¶¶ 52-55.)  Next, Plaintiff alleges that Defendants omitted the same information from the

16  December 30, 2005 Form 8-K.

17          Because these allegations are made on the basis of information and belief, Plaintiff must state

18  with particularity all facts on which the belief is formed.  Here, Plaintiff alleges facts with sufficient

19  particularity.  There are adequate corroborating details in the FAC supporting the allegation that

20  Defendants entered into the SPA to satisfy their judgment to Kuo and pay off her creditors.  First,

21  Plaintiff alleges that the Santa Clara County Superior Court entered judgment, in Kuo's favor,

22  against DVS.  To satisfy this judgment, and by the terms of the Settlement Agreement, Plaintiff

23  alleges that DVS distributed Series D stock, and later the assets of DVS, to Kuo's creditors.  In

24  addition, Plaintiff alleges that specific creditors of Kuo's were to receive these assets, and

25  corroborates this allegation with a list of such individuals.  Finally, Plaintiff alleges that Defendants'

26

27          [5] Plaintiff's allegation that DVS should have pursued the development of DVSK's business instead of satisfying Kuo's creditors by selling DVSK shares is unsupported, just as it was in the original complaint.  Plaintiff does not allege what

28  steps DVS took, or failed to take, to pursue the development of DVSK's business, who was or was not involved in the pursuit of the business or why DVS should have pursued one rather than the other.  These allegations, therefore, are without particularized support.  The remainder of the challenged allegations are discussed below.

14

1   intention to use the proceeds of the sale to pay Kuo's creditors was omitted from the December 12

2   and December 30, 2005 Forms 8-K.  Thus, Plaintiff has alleged these omissions with sufficient

3   particularity.

4        Next, the Court must determine whether the FAC "specif[ies] the reason or reasons why the

5   statements made by [Defendants] were misleading or untrue, not simply why the statements were

6   incomplete."  *Brody*, 280 F.3d at 1006.  To be misleading, the omission must "affirmatively create

7   an impression of a state of affairs that differs in a material way from the one that actually exists."  *Id.*

8   Here, Plaintiff has not met this standard.

9        While Plaintiff argues that once Defendants made a public statement regarding the planned

10  sale they had a duty to speak truthfully and completely, there is no such "rule of completeness" in

11  this Circuit.  A party charged with failing to disclose material information must be under a duty to

12  disclose it in order to be held liable under Rule 10b-5.  *Chiarella v. United States*, 445 U.S. 222,

13  228-29 (1980).  Plaintiff cites a line of out-of-circuit cases which find that "once corporate officers

14  undertake to make statements, they are obligated to speak truthfully and to make such additional

15  disclosures as are necessary to avoid rendering the statements made misleading."  *In re Par*

16  *Pharmaceutical, Inc., Sec. Litig.*, 733 F. Supp. 668, 675 (S.D.N.Y. 1990) (quoting *SEC v. Texas Gulf*

17  *Sulphur Co.*, 401 F.2d 833, 860-62 (2d Cir. 1968)).  The Ninth Circuit has held, however, that there

18  is no "rule of completeness" in this circuit and a statement does not necessarily mislead by simply

19  failing to include all of the relevant facts.  *See Brody v. Transitional Hospitals Corporation*, 280

20  F.3d 997, 1006 (9th Cir. 2002).  Instead, "[t]o be actionable under the securities laws, an omission

21  must be misleading; in other words it must affirmatively create an impression of a state of affairs

22  that differs in a material way from the one that actually exists."  *Id.*  Thus, in the Ninth Circuit,

> neither Rule 10b-5 nor Section 14(e) contains a freestanding completeness
> requirement; the requirement is that any public statements companies make
> that could affect security sales or tender offers not be misleading or untrue.
> Thus, in order to survive a motion to dismiss under the heightened pleading
> standards of the Private Securities Litigation Reform Act ("PSLRA"), the
> plaintiffs' complaint must specify the reason or reasons why the statements
> made by [the defendant] were misleading or untrue, not simply why the
> statements were incomplete.

*Id.* (citations and footnotes omitted).

        Here, while Plaintiff alleges that he did not know about the Pledge Agreement at the time the

United States District Court
For the Northern District of California

1 relevant Forms 8-K were filed, Plaintiff does not allege that Kuo's judgment against DVS, or the

2 resulting Settlement Agreement, were unknown. Therefore, at the time the relevant Forms 8-K were

3 filed, the known state of affairs included the an outstanding judgment against DVS, in Kuo's favor.

4 Thus, as Defendants point out, Plaintiff has not specified reasons why the alleged omissions

5 regarding the plan for the proceeds were misleading in light of the publicly-known information

6 regarding the judgment. (Defs.' Motion at 13.)

7        Therefore, Plaintiff has not sufficiently alleged why the statements were misleading or

8 untrue, rather than just incomplete.[6] Even if, however, the FAC contained allegations that were

9 sufficiently misleading under *Brody*, the Court must also determine whether the allegations create a

10 sufficient inference of scienter.

11              **b.**        **The Allegations do Not Create a Sufficient Inference of Scienter**.

12        The Court accepts Plaintiff's allegations as true, and analyzes them collectively, to determine

13 if a reasonable person would deem the inference of scienter at least as strong as any opposing

14 inference. *See Tellabs, Inc.*, 127 S.Ct. at 2511. The FAC, as discussed above, sufficiently alleges,

15 and supports a strong inference, that Defendants entered into the agreement with KTIC with the

16 intention of using part of the proceeds to pay off Kuo's creditors. What is less clear is whether

17 Defendants' failure to disclose their plan to use the proceeds for this purpose supports a strong

18 inference that Defendants either acted with the intent to deceive, manipulate or defraud the

19 shareholders or acted with recklessness. The FAC alleges that Defendants intentionally withheld the

20 purpose of the transaction from the shareholders with the knowledge that such information would be

21 highly material to investors, but states no further particularized facts supporting a strong inference

22 that Defendants acted with the *intent* to deceive, manipulate or defraud. Thus, to establish the

23 requisite scienter, the FAC must support the strong inference that Defendants acted deliberately

24

25      [6] The Court notes that Plaintiff also alleges that Defendants failed to disclose that Kuo and Watson's intent to use

26 the proceeds from the sale of DVSK, after payment of Kuo's creditors, for their own purposes. (*See* FAC ¶ 56.) Insofar as Plaintiff may have intended this as a separate "omission," the Court considers it here. Plaintiff alleges that he and other stockholders have no information concerning the status of DVS's assets, including how much of the $12 million paid under

27 the SPA is left, or where the funds are deposited. (*Id.* ¶ 46.) Plaintiff provides no other allegations supporting the claim that Kuo and Watson used the funds for their own purposes beyond the payment of Kuo's creditors. This allegation is, therefore,

28 not sufficiently corroborated, nor is it self-evident why the omission of this information was misleading.

United States District Court

For the Northern District of California

1  recklessly by making a highly unreasonable omission that is an extreme departure from the standards

2  of ordinary care.  *See Rubera*, 350 F.3d at 1094.

3      Plaintiff argues that the content of the Forms 8-K and the timeline of events are sufficient to

4  establish scienter.  (Plf.'s Opp. at 11.)  As to content, Plaintiff contends that the Forms 8-K omitted

5  the real plan for the proceeds of the sale and feigned a legitimate plan, to pursue "other strategic

6  alliances." (*Id*.)  While Plaintiff's Opposition states that the plan to pursue other strategic alliances

7  was "nonsense, and Defendants knew it," the FAC does not so allege, much less allege with

8  particularized facts creating a strong inference of scienter.  (*See* FAC ¶ 39.)  In addition, Plaintiff

9  alleges that the December 12, 2005 Form 8-K stated that while the transaction was approved by a

10  majority of the shares, the company would seek shareholder ratification on the sale.  (*See id.*)

11  Plaintiff argues that the fact that no shareholder vote was taken establishes scienter and the existence

12  of a fraudulent scheme.  Plaintiff, however, does not allege that Defendants made the statement with

13  the actual knowledge that statement was false or misleading.  The Court therefore fails to see how

14  Defendants' statement that they would seek shareholder ratification shows deliberate recklessness at

15  the time the statement was made, especially in light of the alleged approval of the sale by a majority

16  of the shares.

17      Next, Plaintiff contends that the timeline of events establishes a strong inference of scienter.

18  As alleged, DVS entered into the SPA with KTIC on December 10, 2005 and only announced that

19  agreement two days after the fact.  (FAC ¶¶ 30, 32.)  In addition, the sale closed on December 29,

20  2005 and it wasn't until the next day that Defendants filed the Form 8-K announcing the final sale.

21  (FAC ¶¶ 34, 36.)  Defendants point out, however, that the SPA entered into on December 10, 2005

22  was only preliminary, and, as the December 12, 2005 Form 8-K stated, either party could cancel the

23  agreement at that time.  Thus, in Defendants' view, the simple timing of the disclosure does not

24  support a strong inference of the requisite scienter.  The Court agrees that announcing a preliminary

25  sale agreement two days after it is made, but seventeen days before it is final or binding, does not

26  establish the requisite scienter.

27      On the other hand, Defendants' main contention regarding scienter is that alternate

28  inferences can be drawn from the facts alleged that foreclose the existence of a "strong inference" of

scienter.  Two of these alternate inferences are the most persuasive.  First, as alleged, DVS was obligated to satisfy the $3.42 million judgment against DVS in Kuo's favor.  Defendants intended to satisfy their obligation to Kuo by arranging a registration of stock, but DVS was not able to register the stock because of a failure to file its current financial information with the SEC.  Defendants then attempted to satisfy the judgment by selling the DVSK shares, which accounted for substantially all of DVS's assets.  Thus, rather than making an extreme departure from the standard of care, Defendants could have been simply fulfilling their obligations under the judgment, the Settlement and the Pledge Agreement.  While Plaintiff alleges that there was misconduct at the time that DVS entered into the Settlement and Pledge Agreements, Plaintiff's allegations regarding potential misconduct in the Settlement Agreement is not pleaded with particularity, as is required.[7]  In addition, it is not self evident how DVS's action of entering into a settlement under duress converts Defendants' later omission regarding the precise plan for the proceeds of the sale into deliberately reckless conduct.

Second, as alleged, a majority of the outstanding shares approved the sale of DVSK and DVS entered into a preliminary, then final, agreement, as relayed in the Forms 8-K.[8]  Defendants disclosed the sale itself, but did not disclose the fact that $1.5 million of the proceeds would be directed to Kuo's creditors in order to satisfy the Settlement Agreement.  A reasonable person could infer that Defendants did not think they had to disclose the *use* of the proceeds because the sale itself was the critical action, the judgment against the corporation was public and Defendants had already received approval by a majority of the outstanding shares to use the proceeds for this purpose.

---

[7] As in the prior Complaint, Plaintiff fails to provide any factual support for the contention that DVS consented to settlement of Kuo's claims under duress.  Plaintiff does not identify to whom Kuo made the settlement threats and promises, when Kuo made them, or what Kuo actually said or did.  There is no description of the actual settlement negotiations or how Kuo created the alleged duress under which DVS acceded to her settlement demands.

[8] Plaintiff contends that Defendant's argument that the transaction had already been approved by a majority of the outstanding shares impermissibly asks the Court to take judicial notice of the truth of the facts stated in Kuo's deposition testimony.  (Plf's Opp. at 13.)  Defendants argue that this piece of information, relayed in Kuo's deposition, goes to the Defendants' state of mind and is thus the Court may take judicial notice that Kuo was under this impression.  (Plf.'s Reply at 8.)  The Court, however, need not resolve this dispute.  Plaintiff's FAC alleges that Defendants' December 12, 2005 Form 8-K claims that DVS obtained written consent for the transactions from the holders of a majority of its shares.  (*See* FAC ¶ 14.)  Plaintiff does not allege that this approval was not obtained, only that the Form 8-K did not identify the consenting shareholders or their interests in the sale.  Thus, the Court takes the allegation that DVS announced the approval in the Form 8-K as true for purposes of this Motion.

United States District Court

For the Northern District of California

1    In view of all of the allegations in the FAC, there is not a sufficient basis for the Court to find

2  that the FAC presents strong inferences that Defendants acted with the requisite scienter.

3  Defendants were under a duty to satisfy the judgment against them and thus entered into the

4  Settlement and Pledge Agreements.  Defendants, after receiving approval from a majority of the

5  shares, sold their only asset to satisfy the judgment, and reported the sale to the public.  The fact that

6  the announcements did not include the precise plan for the proceeds, when the judgment was a

7  matter of public record, does not establish that Defendants acted with the requisite scienter under the

8  PSLRA.  Thus, the Court finds that Plaintiff has not sufficiently pleaded scienter.

9         **3.     Allegations Against Defendant Watson.**

10    Defendants next contend that the FAC is devoid of specific factual allegations relating to

11  Defendant Watson which raise a strong inference - or any inference - of scienter.  (Defs.' Mem. of P.

12  & A. at 13.)  Plaintiff's only response is that the allegations are adequate because DVS's last Form

13  10-K names him as the CFO and Defendants do not argue that he was not the CFO at the time of the

14  alleged wrongdoing.  (Plf.'s Opp. at 9.)  Per  the discussion above, the FAC does not state sufficient

15  allegations of scienter as to any of the Defendants, including Watson. In addition, the FAC only

16  alleges that Watson: (1) was the CFO of DVS; (2) signed the Settlement Agreement and the

17  addendum to that agreement along with Kuo; (3) remained a member of the Board of DVS after May

18  2005, but resigned as CEO in March 2006; and (4) intended, along with Kuo, to use the proceeds of

19  the sale of DVSK for his own purposes.  (FAC ¶¶ 5, 15, 23, 24, 42, 56.)  These allegations do not

20  sufficiently plead scienter and thus cannot survive this Motion to Dismiss.

21         **4.     Allegations of Loss Causation.**

22    Defendants next argue that Plaintiff failed to adequately plead loss causation with respect to

23  the alleged omissions, as required by *Dura Pharm., Inc. v. Broudo*, 125 S.Ct. 1627 (U.S. 2005).

24  Defendants, in this Motion, essentially contend that Plaintiff has not adequately shown the causal

25  connection between the decrease in the DVS stock price and the alleged omissions.  (Defs.' Mem. of

26  P. & A. at 15-16.)   The Court agrees.

27    Even under Federal Rule of Civil Procedure 8, to sufficiently allege loss causation a plaintiff

28  must show the actual economic loss suffered and the causal connection between that loss and the

misrepresentation or omission. *See Dura Pharm., Inc*., 125 S. Ct. at 1634.  In *Dura,* the Court explained that securities fraud actions were available, "not to provide investors with broad insurance against market losses, but to protect them against those economic losses that misrepresentations actually cause." *Dura Pharm., Inc*., 125 S. Ct. at 1633.  Plaintiffs must thus provide Defendants with facts demonstrating the causal connection between the alleged misrepresentations and the losses.  *Id.*

In the original complaint, Plaintiff alleged that Defendants' material omissions caused a significant loss to Plaintiff and that, as a result of the sale of DVSK, DVS stock was, at the time the complaint was filed, traded at 14 cents a share.  (Complt., Docket No. 1, ¶ 55.)  The Court, in its prior order, found that Plaintiff did not plead facts establishing the necessary direct link between particular omissions by Defendants and the decrease in the stock price.  In the FAC, Plaintiff expands on these allegations.  Plaintiff alleges, and the Court takes as true, that on December 29, 2005, DVS stock closed at $1.60 per share.  (FAC ¶ 60.)  DVS's shares have not traded over $1.00 since April 27, 2006, ten days after DVS announced it would not be able to file its Form 10-K.  (*Id.*)  On April 28, 2006, DVS stock declined 14 cents in a day and following the filing of this lawsuit, DVS stock is now thinly traded on the bulletin board at 10 cents a share.  (*Id.*)  Overall, Plaintiff contends that these decreases in value were a result of the sale and subsequent divestment of DVS's assets to Kuo's creditors, which Defendants intentionally concealed from investors.  (*Id.*)

While Plaintiff sufficiently alleges a loss, it does not allege facts showing that the decreases were due to the omissions in the December 2005 Forms 8-K, or the public announcements of those omissions.  *See e.g., Dura*, 125 S.Ct. at 1634 (explaining that Plaintiff failed to allege that the share price fell significantly after the truth became known).  Instead, Plaintiff primarily links the decrease in stock prices to DVS's announcement that it would not be able to file its Form 10-K in April 2006.  (*See* FAC ¶ 60.)  Therefore, Plaintiff has not alleged facts sufficient to show a direct connection between the alleged omissions and the loss caused, as required by *Dura*.

**5.    Materiality and Justifiable Reliance.**

Defendants next contend that Plaintiff failed to adequately plead that the alleged omission was material and that Plaintiff justifiably relied on it, as is required under Rule 10b-5.  (Defs.' Mem. of P. & A. at 17-18.)  In response, Plaintiff contends that Defendants' arguments raise fact questions

1    that are not appropriate for resolution in this Motion.  (Plf.'s Opp. at 15-16.)

2         An omission is material if there is a substantial likelihood that the disclosure of the omitted

3    fact would have been viewed by the reasonable investor as important.  *See Basic Inc. v. Levinson,*

4    485 U.S. 224, 231 (1988)*; TSC Industries, Inc. v. Nothwary, Inc.*, 426 U.S. 438, 449 (1976);

5    *Abramson v. American Pacific Corp*., 114 F.3d 898, 902 (9th Cir. 1997).  The ultimate

6    determination of materiality includes consideration of "both the magnitude of the potential loss and

7    the likelihood that it will actually take place."  *Abramson*, 114 F.3d at 902.  A presumption of

8    reliance "is generally available to plaintiffs alleging violations of section 10(b) based on omissions

9    of material fact."  *Binder v. Gillespie*, 184 F.3d 1059, 1063 (citing *Kramas v. Security Gas & Oil,*

10   *Inc.*, 672 F.2d 766, 769 (9th Cir.1982) (recognizing *Affiliated Ute* rule)).

11        Here, Plaintiff alleges that Defendants' plan for using the proceeds of the sale of DVS would

12   have been highly material to investors.  (*See* FAC ¶ 57.)  Defendants contend, however, that Plaintiff

13   does not allege why a reasonable investor would have considered DVS' act of paying down the Kuo

14   judgment by $1.5 million, out of $12 million in DVSK stock sales proceeds, important in making an

15   investment decision, in light of the fact that the DVSK stock had been pledged to Defendant Kuo

16   and her creditor-designees.  In addition, were the FAC to sufficiently allege that the omissions were

17   material, Plaintiff would then be entitled to a presumption of materiality.  *See Kramas*, 672 F.2d at

18   769.  The Court, however, need not reach this issue given Plaintiff's failure, as discussed above, to

19   sufficiently allege scienter, loss causation and that the omissions were misleading.  In addition, the

20   determination of materiality and reliance will be more appropriate after Plaintiff amends the

21   complaint to sufficiently allege the reasons why the alleged omissions were misleading.

22        For these reasons, the Court **GRANTS** Defendants' motion to dismiss Plaintiff's first claim

23   for violation of Section 10(b) and Rule 10b-5.  The Court **DISMISSES** Plaintiff's first claim

24   **WITHOUT PREJUDICE**.  Plaintiff shall have leave to amend this claim not later than 30 days

25   from the filing date of this Order.

26   **C.    Section 14(c) – Information Statement**

27        Plaintiff's second claim is for violation of Section 14(c) of the 1934 Securities Exchange

28   Act, 15 U.S.C. § 78n(c), and SEC Rule 14c-2, 17 C.F.R. § 240.14c-2(a)(1), (b).  Plaintiff claims that

**United States District Court**
For the Northern District of California

21

because Defendants planned to sell substantially all of DVS's assets, they needed shareholder

authorization and therefore had to circulate an information statement containing the information

specified in Schedule 14C at least 20 days prior to the earliest date on which the action could be

taken.  Because Defendants did not file an information statement at all, Plaintiff contends that

Defendants' action violated Exchange Act Rule 14c-2, promulgated pursuant to Section 14(c), which

requires an information statement prior to corporate action "by the written authorization or consent

of security holders."  17 C.F.R. § 240.14c-2(a)(1).

Section 14(c) mandates the distribution of an "information statement" to certain shareholders

prior to an annual or special meeting of shareholders whenever management fails to solicit proxies

to the extent necessary to trigger Section 14(a).  15 U.S.C.A. § 78n(b)(2).  The information

statement contains the same information as a Section 14(a) proxy statement and is subject to the

same anti-fraud provisions as a proxy statement.  In other words, Section 14(c) requires

management, when no proxy vote is undertaken, to nonetheless disseminate information statements

to shareholders that contain substantially the same information required to be provided in a proxy

solicitation.  *Ciro, Inc. v. Gold*, 816 F. Supp. 253, 269 (D. Del. 1993).

In the previous motion to dismiss in this case, Defendants argued that Plaintiff, as a minority

shareholder, had no private right of action to assert this claim because no economic harm resulted

from Defendants' nondisclosure.  Alternatively, Defendants contended that Plaintiff had failed to

satisfy the pleading requirements for securities fraud under 15 U.S.C. § 78u-4(b) and Rule 9(b).

After analyzing the relevant case law, the Court declined to address whether a private right action

exists under Section 14(c), and instead found that the original complaint, read in light of the

Supreme Court's guidance in *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083 (1991),

militated against the creation of an implied cause of action under Section 14(c) in cases, such as this

case, where minority shareholders seek relief from a transaction that they apparently could not have

prevented.  The Court noted that in the original complaint Plaintiff alleged that the injury was not

caused by Defendants' failure to send out a timely notice, but rather, was caused by the mere fact

that Plaintiff, as a minority shareholder, was powerless to stop the DSVK stock sale.  The Court

further noted that to the extent that Plaintiff, or a critical mass of the other shareholders, could have

United States District Court

For the Northern District of California

1   stopped or otherwise influenced the DSVK stock sale, such facts were not alleged in the operative

2   complaint.

3       In this Motion, Defendants contend that the FAC does not remedy the defects the Court

4   noted in the prior order.  In the FAC, Plaintiff newly alleges that as a result of Defendants' failure to

5   file an Information Statement, Plaintiff was harmed because it was denied the opportunity to seek on

6   its own to enjoin the sale of the DVSK stock and subsequent use of the proceeds to pay Kuo's

7   personal creditors, or to enlist other stockholders in an effort to stop the transaction.  (FAC ¶ 70.)  In

8   response, Defendants contend that Plaintiff still does not allege facts showing that Plaintiff, or a

9   mass of other identified shareholders, would have been able to stop or influence the DVSK stock

10  sale, only that Plaintiff was denied an opportunity to *try* to obtain an injunction.  (Plf.'s Mem. of P.

11  & A. at 21.)  Defendants further contend that Plaintiff could not have enjoined the sale because DVS

12  was required to sell the stock to satisfy the Settlement Agreement, the stock was pledged to the

13  judgment creditors and the sale was approved by a majority of DVS's shareholders.  (Defs.' Reply at

14  13, n.12.)

15      In the FAC, Plaintiff alleges that DVS reported that the sale was approved by a majority of

16  DVS's shareholders.  Plaintiff does not challenge whether the transaction was approved, nor does

17  Plaintiff allege that the shareholder ratification was legally required to authorize the sale.

18  Furthermore, Plaintiff does not allege that Plaintiff, or a critical mass of the other shareholders,

19  could have stopped the transaction.  Instead, Plaintiff alleges only that he was denied an opportunity

20  to try to stop the transaction.  As in the prior order, therefore, the Court finds that the Supreme

21  Court's guidance in *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083 (1991), militates against

22  the creation of an implied cause of action under Section 14(c) in cases, such as this case, where

23  minority shareholders seek relief from a transaction that they apparently could not have prevented.

24      For these reasons, the Court **GRANTS** Defendants' motion to dismiss Plaintiff's second

25  claim for violation of Section 14(c).  The Court **DISMISSES** Plaintiff's second claim **WITHOUT**

26  **PREJUDICE**.

27  **D.      Section 20(a) – Control Person Liability**

28      Plaintiff's third claim is for a violation of Section 20(a) of the 1934 Securities Exchange Act,

23

United States District Court

For the Northern District of California

1   15 U.S.C. § 78t, or Control Person Liability.  Defendants contend that liability under this section

2   depends on the existence of a primary violation of the provisions of the Exchange Act.  (Defs.'

3   Mem. of P. & A. at 24.)  The Court agrees.

4          Section 20(a) of the Securities Exchange Act provides derivative liability for those who

5   control others found to be primarily liable under the Act.  *See In re Ramp Networks, Inc. Sec. Lit.*,

6   201 F. Supp. 2d 1051, 1063 (N.D. Cal.2002); *see also Johnson v. Aljian*, 490 F.3d 778, 781 n.11 (9th

7   Cir. 2007).  Where a plaintiff asserts a Section 20(a) claim based on an underlying violation of

8   Section 10(b), the pleading requirements for both violations are the same.  *See In re Ramp Networks*,

9   201 F. Supp. 2d at 1063.  "To be liable under section 20(a), the defendants must be liable under

10  another section of the Exchange Act." *Heliotrope General, Inc. v. Ford Motor Co.*, 189 F.3d 971,

11  978 (9th Cir.1999).

12         Here, Plaintiff has not stated a claim against Defendants under the Securities and Exchange

13  Act and thus there can be no primary liability under the act from which the Control Person Liability

14  under Section 20(a) derives.  Plaintiff does not contend otherwise.

15         For these reasons, the Court **GRANTS** Defendants' motion to dismiss Plaintiff's third claim

16  for violation of Section 20(a).  The Court **DISMISSES** Plaintiff's second claim **WITHOUT**

17  **PREJUDICE**.

18  **E.**      **Remaining State Law Claims**

19         Plaintiff's fourth, fifth, and sixth claims are for the appointment of a receiver pursuant to

20  Title 8 Delaware Code Sections 226(a)(3), 291, and Delaware common law, respectively.  Plaintiff's

21  seventh and final claim seeks an order compelling Defendants to hold an annual shareholder

22  meeting pursuant to 8 Delaware Code § 211(c).  Defendants contend that if the Court dismisses the

23  federal claims, the Court should decline to exercise supplemental jurisdiction over these state law

24  claims.  (Defs.' Mem. of P. & A. at 25.)  Plaintiff argues that the Court should retain jurisdiction

25  over these claims.  (Plf.'s Opp. at 21-22.)

26         As long as the complaint sets forth a claim "arising under" federal law, the district court may

27  adjudicate state law claims that are transactionally related to the federal claim.  *See* 28 U.S.C. §

28  1367(a).  The fact that the court rules against plaintiff and dismisses the federal claim prior to trial

**United States District Court**
For the Northern District of California

1   does not automatically oust the court of supplemental jurisdiction.  *See* Judge William W. Schwarzer

2   et al., *Federal Civil Procedure Before Trial,* § 2:145.2 (2006).  The dismissal is a factor for the court

3   to consider in deciding whether to decline to exercise its supplemental jurisdiction.  A court has

4   discretion to retain the supplemental state law claim and grant relief thereon.  28 U.S.C. §

5   1367(c)(3); *see United Mine Workers v. Gibbs*, 383 U.S. 715, 728 (1966); *Brady v. Brown*, 51 F.3d

6   810, 816 (9th Cir. 1995).  The court may decline to exercise supplemental jurisdiction where any of

7   the following factors exist: (1) the state law claim involves a novel or complex issue of state law; (2)

8   the state law claim substantially predominates over the claim on which the court's original

9   jurisdiction is based; (3) the district court has dismissed the claims on which its original jurisdiction

10  was based; or ( 4) "in exceptional circumstances, there are other compelling reasons for declining

11  jurisdiction."  28 U.S.C. § 1367(c)(1)-(4).

12          Here, because the Court has granted leave for Plaintiff to amend its current claims that arise

13  under federal law, and because this case is its early procedural stages, the Court will continue to

14  exercise supplemental jurisdiction over the remaining state law claims at this point in the litigation.

15  The Court therefore **DENIES** Defendants' Motion to Dismiss on this claim.  However, in light of

16  the Court's determination on the other issues, Plaintiff is ordered to re-file this claim with an

17  amended complaint, if any.

18                                            **CONCLUSION**

19          For the foregoing reasons, the Court **GRANTS in part and DENIES in part** Defendants'

20  Motion to Dismiss, and **DISMISSES** Plaintiff's first, second and third claims **WITHOUT**

21  **PREJUDICE**.  Plaintiff shall have leave to file an Amended Complaint, if any, not later than 30

22  days from the filing date of this Order.

23

24  **IT IS SO ORDERED.**

25

26  Dated: April 3, 2008                          _____

27                                                MARTIN J. JENKINS
                                                  UNITED STATES DISTRICT JUDGE

28